STATE OF VERMONT

ENVIRONMENTAL COURT

}
Appeal of Edward and Phyllis Lashins }          Docket No. 192-10-03 Vtec
}
}

Decision and Order

Appellants Edward and Phyllis Lashins appealed from a decision of the Zoning

Board of Adjustment (ZBA) of the Town of Wilmington, granting conditional use approval

to Appellee-Applicant Timothy T. Gore to operate a children's camp on property on Ballou

Hill Road and Lake Raponda in a Residential zoning district.   Appellants are represented

by Stephen L. Saltonstall, Esq. and Peter M. Lawrence, Esq.; Appellee-Applicant Timothy

T. Gore appeared and represented himself; the Town was  represented by Richard M.

Gale, Esq.  An evidentiary hearing was held in this matter before Merideth Wright,

Environmental Judge.  The parties were given the opportunity to submit written memoranda

and requests for findings.  Upon consideration of the evidence and of the written

memoranda and requests for findings filed by the parties, the Court finds and concludes as

follows.

Appellee-Applicant Timothy T. Gore proposes to operate a children's camp on land owned by him and by his parents between Ballou Hill Road and Lake Raponda. He proposes to call the camp 'Camp Najerog,' after a more extensive children's camp of that name operated by his grandparents on that and other land in the area. The land consists of approximately 96 acres in three main areas.

Parcel A is a roughly rectangular six-acre parcel on Ballou Hill Road owned by Appellee-Applicant's parents, Peter B. Gore and Sally L. Gore. It contains a farmhouse which is served by a water supply system and a septic system, and which contains a room available to be used as a warm indoor space for activities on rainy days. Meals may be served from time to time in the farmhouse; otherwise, meals would be served outdoors (but, presumably, prepared in the farmhouse).

Parcel A also contains three cabins each with the capacity to sleep eight, not equipped with water supply or wastewater facilities, two wash houses with bathroom facilities served by the water supply and septic system of the farmhouse, and a parking area adjacent to Ballou Hill Road. Although Appellee-Applicant's proposal (Exhibit 2) states that "other outbuildings would provide space on rainy days," no other outbuildings are shown on the plan on Exhibit 4. Appellee-Applicant proposes to equip the cabins with fire extinguishers. The cabins are located in an area accessible to emergency services.

Parcel A is adjacent to Parcel B, but only overlaps by about fifty feet along Parcel A's back line at its northwest corner where it meets the southerly property line of Parcel B at its southeast corner. A ten-foot-wide gap in the fence or wall[1] allows passage over a trail between Parcels A and B.

Parcels B and C are both owned by Appellee-Applicant. Parcel B is a roughly rectangular forested parcel of about sixty acres in area, oriented on a north-south axis, with direct access from Ballou Hill Road by an approximately fifty-foot-wide strip of land at the southwesterly corner of Parcel B that is part of Parcel B. Parcel B is contiguous to other forested property, and contains several trails, including a logging road with access from Ballou Hill Road capable of conducting emergency vehicular traffic over Parcel B onto Parcel C. Parcel B is otherwise unimproved, although some forestry management activities have occurred on Parcel B and possibly also on Parcel C.

Hiking and nature study activities are proposed for Parcels B and C. Appellee-Applicant's description of the other activities to be conducted on each parcel does not adequately distinguish between Parcels B and C. Under the description for 'Parcels B and C' in Exhibit 2, Appellee-Applicant states that "tenting and camping skills would be practiced [to] prepar[e] campers for trips away from our home base," and states limitations proposed for Parcel C, but does not state whether any overnight activities are proposed to occur on Parcel B. There are no fire rings, water supply, or waste disposal

facilities on Parcel B.  Appellant-Applicant proposes to maintain 'quiet hours' on Parcels A and B  from 10 p.m. to 7 a.m.

Parcel C is a roughly-rectangular forested parcel of about thirty acres in area, oriented on an east-west axis, with access from Parcel B over an approximately fifty-foot-wide strip of land connecting the northeasterly corner of Parcel B with the southwesterly corner of Parcel C.  It is contiguous to other forested property, including that of Appellants.  The easterly boundary of Parcel C is frontage on Lake Raponda; the property width at the lake is approximately 1,000 feet (by scale).  The northerly boundary of Parcel C is the southerly boundary of Appellants' property, which also has frontage on Lake Raponda.  Immediately to the south of Parcel C is a development of eighteen houses, known as Raponda Landing.  That development has a common access to the lake at a dock which is located approximately twelve feet to the south of Parcel C.   Parcel C contains several trails, one of which is a continuation of the Parcel B logging road capable of conducting emergency vehicular traffic onto Parcel C to the area near the lakeshore.

Parcel C contains a dock at the lakeshore, located approximately 600 feet southerly of Appellants' property line.  One rustic shelter is located approximately fifty feet from the lakeshore.  Another rustic shelter and a pit-type privy are located approximately 200 feet from the lakeshore.  Each shelter is equipped with a fire ring of stones which

Appellee-Applicant proposes to keep maintained free of flammable debris and equipped with a fire extinguisher.

Parcel C is not equipped with a drinking water supply, so that any drinking water for activities on Parcel C would have to be carried there from Parcel A, or water pumped from the lake would have to be filtered or otherwise treated for drinking water. Appellant-Applicant proposes to keep tenting and camping activities on Parcel C within 200 feet of the existing shelters, to require use of the privy for waste disposal, and to maintain 'quiet hours' on this parcel from 9 p.m. to 7 a.m.

Appellee-Applicant proposes to operate a children's overnight camp on the combined project property for a maximum of eight weeks within the months of June, July and August, for groups of no more than 21 campers, ranging in grade level[2] from third grade through eighth grade, with no fewer than three staff members, including himself, all over 18 years of age. Appellee-Applicant does not propose to have extra staff available to enable at least two staff members to be located with each group of campers, when the groups are separated so that one group may be at the waterfront on Parcel C and another group may be at the cabins on Parcel A, although he may choose to provide more staff on occasion. He proposes that the maximum number of camp participants would be a total of 24, including campers and staff.

Within the months of June, July and August, Appellee-Applicant proposes to spend a week of pre-camp preparation and a week of post-camp cleanup, as well as to conduct the eight weeks of scheduled camp sessions.

Appellee-Applicant proposes to teach camping skills on the property and to use it as a base from which the campers would travel to other locations for hikes on the Long Trail and in the Green and White Mountains, and canoeing on the Connecticut River. He proposes to offer traditional camp activities such as overnight tent camping, campfires and outdoor cooking, swimming and boating, arts and crafts, sports, challenge games, pottery,[3] and forestry and nature studies. He suggests that an average of one overnight per week would occur on Parcel C, but does not propose to limit the number of overnights or campfires on Parcel C to any specific limit per week.

Appellee-Applicant proposes to obtain whatever approvals from the State of Vermont are necessary for camp operation, but did not provide any evidence of what those approvals may be. Regulations issued by the State of Vermont Department of Health and the State of Vermont Agency of Natural Resources may operate to regulate the camp's cabins, rustic shelters, and tent site lodging facilities; the camp's food preparation and food service facilities; the camp's water supply; or the camp's human waste and wastewater disposal. However, no party presented evidence and the Court cannot make a finding as to whether any of those regulations would apply to Appellee-Applicant's specific proposal

under the circumstances of this case, or whether Appellee-Applicant's proposal would satisfy any such regulations so as to be allowed to operate under those programs. Similarly, if approval is required from the municipal fire warden for campfires, no party presented evidence as to the presence or absence of such a requirement.

Both Appellee-Applicant and the Town proposed in their post-hearing filings that the camp comply with the conditions imposed by the ZBA. Although they were not provided in evidence, the Town's Memorandum quoted them in full. They provide that the permit is only valid as long as all three parcels, totaling 96 acres or more, are available for use as a children's camp, and that any modifications must obtain further approval from the ZBA. They prohibit the parking of vehicles on public roadways, require a parking area on Parcel A for drop off and pick up of campers, establish quiet time from 10 p.m. to 7 a.m., require at least one fire extinguisher in each lean-to and cabin, require all outside cooking to take place at the fire rings or on a camp stove, require that at least one staff member sleep in each cabin or lean-to occupied by campers, and require that the number of campers be limited to 21 and the total number of campers plus staff be limited to 24. The conditions imposed by the ZBA also require the camp to comply with "all pertinent state and local requirements relating to operating a children's summer camp, disposal of waste, and water supply," but do not say what these requirements may be.

Appellee-Applicant also mentioned the American Camping Association as having requirements or standards for certain topics (in his cross-examination of Mr. Lashins), but did not state what those standards were and did not propose to incorporate any accreditation standards of any voluntary summer camp association as proposed permit conditions.

Under the Town of Wilmington Zoning Ordinance, children's camps are a conditional use in this district.[4] §7(A)(4). To grant conditional use approval, the ZBA, and hence this Court in this de novo appeal, must find that the proposed use meets "the requirements of this ordinance" and that it will not adversely affect the capacity of existing or planned community facilities, the character of the area affected, traffic on roads or highways in the vicinity, or other bylaws then in effect. §7. Unlike schools, which are exempt from municipal regulation of other than a listed series of characteristics, 24 V.S.A. §4413(a)(2)(2004) (also see former 24 V.S.A. §4409(a)(3)), children's summer camps do not fall within that exemption. Nothing in the ordinance defines 'children's summer camp' or requires a particular camper-to-staff ratio or requires compliance with any standards of the American Camping Association or any other published standards, for a particular proposal to fall within the definition of 'children's summer camp.'

The proposal will not adversely affect the capacity of existing or planned community facilities.  The property is not connected to municipal water or sewer services, and will not require any  increase in the capacity of the municipality to provide emergency services; that is, any additional police fire or emergency services equipment or personnel.  Fire equipment is able to access Parcel A and the portions of Parcels B and C accessible by the logging road, including near the waterfront area of Parcel C.

The proposed use will not adversely affect traffic on roads or highways in the vicinity.  There is adequate parking on Parcel A for vehicles dropping off and picking up children at the beginning and end of any camp session, for staff parking, and for the camp vehicles to assemble to transport campers, staff, canoes and other equipment on trips to other locations.  Ballou Hill Road serves twelve or fourteen single-family residences in the summer, plus the traffic for the eighteen homes in the Raponda Landing development, the access drive for which turns off Ballou Hill Road.  As the camp is proposed as an overnight camp rather than a day camp, Ballou Hill Road can accommodate the vehicular trips involved with transporting children and staff at the beginning and end of any camp session and with transporting campers, staff, canoes and other equipment on trips to other locations during the camp sessions.

We first address whether the proposal will adversely affect the character of the area around Ballou Hill Road, near Parcel A.[5]  Twelve to fourteen single-family residential

properties have frontage on Ballou Hill Road in this area, not considering the Raponda Landing development of eighteen houses using an access road onto Ballou Hill Road. It is a residential area, more populated in the summer than in the winter, characterized by normal residential noises, such as children playing and lawnmowers, as well as normal residential odors including outdoor fire and barbeque odors in the summer. Occasional larger gatherings or parties at peoples' homes generate correspondingly more noise from time to time in the summer months. The area has become more built up than in the 1950s or 1960s when Appellee-Applicant's grandfather ran the larger camp in the area; in fact, that camp occupied land now owned by neighboring residents.

The activities proposed for the 6-acre Ballou Hill Road Parcel A will not adversely affect the rural residential character of the Ballou Hill Road area, if the operation adheres to the proposed 10:00 p.m. to 7:00 a.m. quiet hours for that parcel, and if state approval is obtained of the water supply, waste disposal, and food and lodging facilities on Parcel A. However, Appellee-Applicant failed to show that any such state standards are applicable. Appellee-Applicant also failed otherwise to show that the food preparation and service and the use of the privy, the washhouse, and the farmhouse's water supply and septic system on Parcel A would not generate water pollution or unsanitary conditions affecting nearby properties or affecting nearby groundwater. Appellee-Applicant also failed to propose to meet any specific American Camping Association standards or other

proposed conditions relating to the water supply, waste disposal, and food preparation and service facilities on Parcel A.

Therefore, in the event that the proposal turns out to be exempt from state approval, we cannot make the required finding that Appellant-Applicant has met his burden of proof[6] that the proposal will not adversely affect the character of the Ballou Hill Road area.  Under those circumstances, the  application must be denied, without prejudice to Appellee-Applicant's making a future application that meets the burden of showing that the water supply, waste disposal, food service and lodging uses on Parcel A will not create health hazards or groundwater pollution affecting the character of the area, and allowing the ZBA or the court on appeal to impose appropriate conditions to meet the conditional use criteria.[7]

The parties should also note that Appellee-Applicant did not propose to use any amplification systems anywhere on the property, for either voice or music, so that any such activities on the property would require a permit amendment from the ZBA  to determine if they could be approved or whether any additional conditions would be required to continue to meet the criterion of no adverse effect on the character of the Ballou Hill Road area.

With respect to the activities proposed for Parcel B, as long as the operation of the camp adheres to the proposed 10:00 p.m. to 7:00 a.m. quiet hours for that parcel, the proposal will not adversely affect the character of either the Ballou Hill Road area or the

Lake Raponda lakeshore area. The parties should also note that Appellee-Applicant did not propose any campfires or fire rings on Parcel B; therefore any such activities on Parcel B would require a permit amendment from the ZBA to determine if they could be approved or whether any additional conditions would be required to continue to meet this criterion.

The area with frontage on Lake Raponda, near Parcel C, including Appellants' property, cannot be characterized as a pristine or nearly wilderness area, although the area on west side of lake near Appellants' property is to some extent protected from development and is subject to a private development constraint of approximately one housing unit per twenty-five acres. On the other side of Appellee-Applicant's property, however, is a development of eighteen houses, with shared use of a dock and lakeshore access only twelve feet to the south of Appellee-Applicant's shoreline. Mountain View, a residential development of 38 houses directly across the lake, also has lakeshore access to a fifty-foot dock. Also across the lake is a public access area which generates public lake use at least until sunset. In the summer months there is extensive swimming, boating, and fishing use of the lake from individual private properties, the public access area, and the multi-unit development accesses. At the lakeshore, traffic on Route 9 is audible, as is traffic on Lake Raponda Road. No evidence suggested that any overnight camping or nighttime campfires take place on any other lakeshore property close to or

visible from the lake, although outdoor cooking does take place on such lakeshore properties.

Therefore, the daytime (7 a.m. to dusk) use of Parcel C for the camp's access to and use of the waterfront area for play, for outdoor cooking, and for lake access for swimming, fishing and boating, would not adversely affect the character of the area near Parcel C, including Appellants' parcel,[8] provided that state approval is obtained of the waste disposal privy on Parcel C, so that it does not generate water pollution affecting the lake or affecting nearby groundwater. On the other hand, the overnight use of the waterfront area Parcel C for camping and campfires near the two shelters would be incompatible with the character of that area, based on the evidence that these nighttime activities do not occur elsewhere at lakeshore properties in the area.

However, Appellee-Applicant failed to show that any such state standards are applicable; and failed otherwise to show that the use of the privy on Parcel C would not generate water pollution affecting the lake or affecting nearby groundwater; and failed to propose to meet any specific American Camping Association standards or other proposed specific conditions relating to waste disposal at the waterfront. Therefore, in the event that the proposed waste disposal at the waterfront turns out to be exempt from state approval, we cannot make the required finding that Appellant-Applicant has met his burden of proof that the proposal will not adversely affect the character of the Lake Raponda area near

Parcel C.  Under those circumstances, the  application must be denied, without prejudice to Appellee-Applicant's making a future application that meets the burden of showing that the waste disposal use of the privy near the lakefront area of Parcel C will not create lake or groundwater pollution, and allowing the ZBA or the Court on appeal to impose appropriate conditions to meet the conditional use criteria.

The proposed use meets all the other requirements of the Zoning Ordinance, and does not adversely affect any other bylaws in effect, to the extent that any other bylaws[9] were brought to the attention of the Court at trial of this appeal.

Because of the lack of evidence as to other required permits or other appropriate conditions, we must rule **in the alternative**, as follows.

A.                      If state approval is required for <u>and</u> is obtained for the water supply, waste disposal, and food and lodging facilities on Parcel A; <u>and</u> if state approval is required for <u>and</u> is obtained for the waste disposal privy on Parcel C; then Appellee-Applicant's application for conditional use approval for the children's summer camp as described in the application and Exhibits 2 and 4 (including but not limited to the calendar months of operation, the numbers of campers and staff, and the locations of facilities and activities) is approved, for the reasons discussed above, subject to the conditions that the camp operation shall comply with the

10:00 p.m. to 7:00 a.m. quiet hours for Parcels A and B, shall comply with the 7:00 a.m. to dusk[10] hours of operation on Parcel C, and shall comply with the other conditions imposed by the ZBA. No changes to or expansions of the operation shall occur without prior approval by the ZBA of an amendment to this approval. Proof of the requirement for and obtaining of each such state permit shall be submitted to the ZBA before any zoning permit may be issued by the Zoning Administrative Officer for operation of the camp based on this conditional approval.

OR

B.      In the event that state approval is not required for any one or more of the following:

·       the water supply to serve the camp on Parcel A;

·       the waste disposal to serve the camp uses on Parcel A (including the washhouse waste water, the privy, and the farmhouse to the extent it is used for the camp operations);

·       the food and lodging facilities on Parcel A; or

·       the waste disposal privy on Parcel C;

then Appellee-Applicant's application for conditional use approval for the children's summer camp, as described in the application and in Exhibits 2 and 4, is denied,

for the reasons discussed above, without prejudice.  We emphasize that this is not a determination that the proposal necessarily fails to comply with any of the conditional use criteria, only that Appellee-Applicant has not provided the evidence necessary for the Court to determine that it does comply and to impose appropriate conditions.  Therefore this denial is specifically without prejudice to Appellant-Applicant's applying to the ZBA for the same or any amended approval, with such additional evidence or such additional proposals to comply with American Camping Association or other proposed standards or conditions to allow positive findings to be made on each of the conditional use criteria for which positive findings could not be made in this decision.

Dated at Berlin, Vermont, this 27th day of June, 2005.

_____
Merideth Wright
Environmental Judge

---

[1]  No legend appears on the Exhibit 4 plan to indicate whether this is a stone wall or some other feature.

[2] Appellee-Applicant expects the age range of these grade levels to range from approximately 9 years old through 14 years old, but only proposes the grade level limitations, so that the campers might be older or younger than those age ranges if they were within the grade level range.

[3] Although Appellee-Applicant proposed 'pottery' as one of the camp activities, no evidence was presented as to whether there is a pottery kiln on site or in what building it might be located or whether any Department of Labor and Industry or other fire regulations apply to it. Any such use would have to comply with any such regulations.

[4] Appellant Edward Lashins testified that he and his wife would not have bought their property if they had realized that a children's summer camp could be operated on the neighboring parcel. This issue of their expectations or their understanding of the zoning ordinance at the time of their purchase is not within the jurisdiction of this Court.

[5] We note that the approval of one particular conditional use in one location within the Residential district does not create a precedent for the approval of another conditional use within the Residential district; rather, each conditional use must be analyzed independently according to the standards in the Zoning Ordinance and according to whether any appropriate conditions can achieve compliance with those standards. As it is now written, the Zoning Ordinance allows for various conditional uses in the Residential zoning district, including summer camps, planned unit developments, commercial and public recreational facilities, professional offices and studios, and hotels and motels. Each new proposal for a conditional use has to undergo scrutiny by the ZBA as to whether it meets the conditional use standards, independently of the approval or disapproval of any other application.

[6] This is not a determination that the proposal will necessarily have an adverse effect, only that Appellee-Applicant has not presented sufficient evidence that it will not do so. It is not enough that Appellee-Applicant is experienced in running outdoor education and camping programs for this age group and size of group, and that he would not

intentionally do anything to endanger the campers or the neighborhood. The ZBA or this Court is obligated to make a positive finding that the proposal will not have an adverse effect, and to impose appropriate conditions. Appellee-Applicant has not provided the Court with the evidence necessary to enable the Court to formulate appropriate conditions that would result in that positive finding.

[7] The Town's memorandum expressed the concern that it would not be able to monitor or enforce detailed restrictions on the camp's operation. However, the purpose of reasonable conditions in a conditional use approval is to establish the parameters for operation of a conditional use so that it can be expected to meet the conditional use criteria and could be approved at all. Under 24 V.S.A. §4470(b) (2004) it may be other interested persons, rather than the Town, who seek enforcement of those conditions.

[8] Any other issues of concern to Appellants in the areas of potential trespass, tort liability or insurance are beyond the jurisdiction of this Court. Any issues of whether Appellee-Applicant has brought groups of children from the school where he teaches to the property in the past, are not before the Court in this appeal and we make no determination at this time as to whether such issues are within the jurisdiction of Zoning Ordinance.

[9] In particular, no party suggested that the Town of Wilmington has any municipal regulations governing site plan approval, see 24 V.S.A. §4416 (2004), which could require analysis of the effectiveness of screening and landscaping with respect to neighboring properties, nor any municipal regulations governing whether burn permits must be obtained from a local fire warden for any specific classes of outdoor fires at commercial facilities or children's camps.

[10] Any dispute as to the time at which dusk occurs shall be resolved by reference to National Weather Service data, if necessary.